UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO HADLEY,

    Movant,

v().

UNITED STATES OF AMERICA,

    Respondent.

Case No. 1:09-CV-278
(Criminal Case No. 1:06-CR-5)

HON. GORDON J. QUIST

## OPINION

This Court has before it Antonio Hadley's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. The Government has filed a response in opposition to Hadley's motion, and Hadley has filed a reply to the Government's response. After reviewing the pleadings, the affidavits, and the parties' briefs, the Court concludes that Hadley's arguments are without merit and he is not entitled to relief.

**I.**    **Procedural History.**

On March 30, 2006, Hadley was convicted by a jury in this Court of (1) conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); (2) felon in possession of a firearm, in violation of 18 U.S.C. § 924(g)(1) (Count 2); and (3) possession of a firearm in furtherance a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 3).

At the close of the Government's case-in-chief, Hadley, through his counsel, moved for a directed verdict on all three counts. The Court denied Hadley's motion with respect to Count 2 but reserved its decision with respect to Counts 1 and 3 because it was concerned about whether

Hadley's confession to Deputy Hopkins was sufficiently corroborated by independent evidence to sustain a conviction on those counts. Hadley then presented his case, which consisted solely of his own testimony. After Hadley rested, his counsel renewed his motion for acquittal. The Court again denied the motion as to Count 2 but reserved judgment as to Counts 1 and 3. After the jury returned its verdict, Hadley renewed his motion for acquittal a final time, and the Court reiterated its previous rulings. On August 10, 2006, the Court issued an Opinion and accompanying Order denying Hadley's motion for acquittal on both Counts 1 and 3.

On December 6, 2006, this Court sentenced Hadley to 87 months imprisonment, consisting of 27 months on Counts 1 and 2 and 60 months on Count 3, to run consecutive to the sentence on Counts 1 and 2. Judgment was entered on December 7, 2006. Hadley filed an appeal with the Court of Appeals for the Sixth Circuit, which affirmed in an unpublished opinion issued January 7, 2008. The sole issue raised in the appeal was whether this Court erred in denying Hadley's motion for judgment of acquittal. Concluding that this Court "fully articulated" the reasons why relief under Rule 29 was inappropriate in its August 10, 2006, Opinion, the Sixth Circuit concluded that "the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose." *United States v. Hadley,* No. 06-2598 (6th Cir. 2008). A mandate was entered on June 2, 2008. Hadley filed a petition for writ of certiorari to the United States Supreme Court on August 25, 2008. Hadley's petition was denied on October 27, 2008. Thereafter, Hadley filed this timely motion under 28 U.S.C. § 2255.

### II.     Hadley's Ineffective Assistance of Counsel Claims Lack Merit.

Hadley alleges that his trial attorney, Craig A. Frederick, provided ineffective assistance of counsel for the following reasons: (1) his counsel failed to file a motion to suppress based on a lack of reasonable suspicion to stop Hadley for driving with a suspended license without first

2

confirming that Hadley's license was, in fact, suspended; (2) his counsel was ineffective for failing to cross examine Trooper Service regarding his qualifications as a canine handler and the qualifications of his dog, Nemo, in drug detection; (3) his attorney failed to cross-examine Deputy Hopkins about his identification of Joseph Viera as Hadley's passenger; (4) his attorney failed to object to more than 90% of the cross-examination as being without proper foundation and beyond the scope of direct examination and on the basis of badgering the witness; (5) his counsel failed to make an alternative argument in his motion for judgment of acquittal, pursuant to *Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579 (2007), that there was insufficient evidence to establish that the gun Hadley possessed was connected to the drug trafficking offense; (6) his counsel failed to challenge the racial makeup of the jury pool; (7) his counsel failed to poll the jury; and (8) his counsel failed to provide him with transcripts of all proceedings he needed in order to prepare his § 2255 motion.

The United States Court of Appeals for the Sixth Circuit has summarized the test for ineffective assistance of counsel as follows:

> A two-prong test establishes ineffective assistance of counsel: 1) the defendant must show that his counsel's performance was deficient; and 2) prejudice must have resulted to counsel's defendant from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*
>
> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.
>
> To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

3

confidence in the outcome." *Id.* at 694, 104 S. Ct. 2052. To determine if Kinnard was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

*Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

The standard under the *Strickland* deficiency prong is whether Petitioner's counsel provided "reasonably effective assistance," and "whether counsel's conduct <u>so undermined</u> the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686-87, 104 S. Ct. at 2064 (emphasis added). There is a presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, to prevail, Petitioner must meet the burden of showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688-89, 104 S. Ct. at 2064. The Court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Id.* at 690, 104 S. Ct. at 2065-66.

Hadley has not met his burden on any of his claims.

### A. Counsel Was Not Ineffective for Not Filing a Motion to Suppress

The test for establishing ineffective assistance of counsel for failure to file a motion to suppress evidence is based on *Strickland* and is set forth in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986):

> In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S., at 688, 104 S.Ct., at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*., at 694, 104 S.Ct., at 2068. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.

4

* * * *

> As is obvious, *Strickland's* standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Kimmelman,* 477 U.S. at 375, 382; 106 S. Ct. at 2582-83, 2586-87.

Thus, Hadley must show both that his trial attorney was "objectively unreasonable" in not filing a motion to suppress, and that, had he filed a motion to suppress, there is a reasonable probability that the verdict would have been different. Neither prong is met here.

For purposes of providing background for this and other claims, the Court sets forth the facts as stated in its August 10, 2006, Opinion denying Hadley's motion for acquittal.

> Deputy John Hopkins of the Berrien County Sheriff's Department testified that on February 19, 2005, while on patrol, he drove by a residence and saw Antonio Hadley and Hadley's vehicle. Deputy Hopkins knew that Hadley's driver's license was suspended. After observing Hadley and his vehicle, Deputy Hopkins circled the block and came to a stop on another street in a location where he hoped he could observe Hadley driving his vehicle. A short time later, Deputy Hopkins noticed Hadley driving his vehicle approaching the Deputy's marked police cruiser from the rear. When Hadley was about twenty to thirty feet from Hopkin's marked cruiser, Hadley stopped his vehicle, executed a three-point turn, and began traveling away from Deputy Hopkins' vehicle in the opposite direction. Deputy Hopkins drove in a manner to locate and close with Hadley and ended up approaching Hadley's vehicle head-on. As Deputy Hopkins closed the distance with Hadley's car, Hadley parked his vehicle on the wrong side of the street. Deputy Hopkins then observed Hadley and Hadley's passenger, whom Hopkins knew to be Joseph Viera, exit the vehicle and walk briskly toward the front door of a nearby residence. Deputy Hopkins exited his vehicle and called to the men to stop. The men, however, proceeded to the porch of the residence where Hadley began banging on the door and asking to enter the home.
> When Deputy Hopkins reached the porch, he told Viera to stand off to his side and to not come up behind him. Hopkins then asked Hadley for his driver's license. Hadley produced a Michigan ID card but could not produce a valid driver's license. Deputy Hopkins then began to pat-down Hadley's clothes for weapons. While trying to pat-down Hadley's front waist-band, Hadley tried to grab Deputy

5

Hopkins' hand twice. Deputy Hopkins stepped back, removed his taser, and instructed Hadley to stop trying to grab his hand and to submit to a pat-down or risk receiving a discharge from the taser. Hadley then complied with the pat-down. Deputy Hopkins felt two large bulges in Hadley's front pockets that Hopkins believed, from his training and experience, to be U.S. currency. When Deputy Hopkins began to pat-down Hadley's rear pants pockets, Hadley again tried to grab Deputy Hopkins' hand and push it away from his body. Deputy Hopkins warned Hadley that if he tried to grab him again, he would discharge his taser. In patting down the rear waste band of Hadley's pants, Deputy Hopkins felt a firearm in the "small" of Hadley's back. He reached into this area and removed a Glock, model 27, .40 caliber semiautomatic pistol in a black holster. Deputy Hopkins then advised Hadley that he was under arrest and instructed him to walk over to his police cruiser. After placing Hadley in the back seat of his vehicle, Deputy Hopkins looked back for Viera. Viera, however, had fled.

  Deputy Hopkins testified that, while patting down Hadley, Hadley told him that he (Hadley) was working undercover with Benton Township Police Officer Eugene Koza to set up some drug dealers and that Deputy Hopkins was "screwing up" what they had going. After placing Hadley in the back seat of his vehicle, Deputy Hopkins handcuffed Hadley. Hopkins then removed the currency from Hadley's front pockets, which amounted to $1,536. Deputy Hopkins then advised Hadley of his *Miranda* rights. Hadley acknowledged that he understood his rights and agreed to talk to Deputy Hopkins. Hadley told Deputy Hopkins again that he was working for Officer Koza to set up some drug dealers. Hadley explained that he had picked up Viera and took him to a nearby residence where he and Viera were fronted nine ounces of powder cocaine. Hadley said that he was driving Viera to another location where Viera planned to sell the cocaine for $5,600. Hadley explained that he then planned to drive Viera back to the residence where they received the drugs to deliver the money to the person who fronted them the cocaine. Deputy Hopkins asked Hadley what he was going to receive for his efforts. Hadley replied that he had already received his payment, and explained that his payment was the purchase of the Glock firearm for $350, which is well below the firearm's market value.

  Michigan State Police Trooper Joel Service arrived at the arrest scene with his drug-detection canine. Trooper Service used his drug-detection dog to search Hadley's vehicle for the presence of narcotics. Trooper Service explained that, although the drug detection dog did not "alert," he showed a "strong interest" in the back seat of Hadley's vehicle. Trooper Service explained that a drug-detection dog alerts when a controlled substance is actually present in a location and shows a "strong interest" when a controlled substance was recently in a location. In the back seat of Hadley's vehicle, Detective Hopkins found a "clear plastic seal," which, Hopkins explained, is commonly used to package drugs. The plastic seal discovered in Hadley's vehicle, however, had not been used.

  Finally, Officer Koza testified at trial that while Hadley worked with law enforcement officers back in November 2004, Hadley was not working with him to "set up drug dealers" on February 19, 2005.

(8/10/06 Opinion at 2-4.)

Hadley argues that his counsel should have filed a motion to suppress because Deputy Hopkins lacked a reasonable suspicion to stop Hadley for driving with a suspended license. The crux of Hadley's argument is that Deputy Hopkins should have confirmed that Hadley's license was suspended prior to stopping Hadley.

Hadley's argument lacks merit because any motion to suppress would have been denied. Deputy Hopkins testified that based upon prior contacts that he had with Hadley, he knew that Hadley's license was suspended and that Hadley was not supposed to be driving. In addition, Hadley's behavior in executing a three-point turn around and heading the opposite direction when he saw Deputy Hopkins' marked police cruiser confirmed Deputy Hopkins' belief that Hadley was driving without a license and strengthened the reasonable suspicion that Deputy Hopkins already had. In fact, Deputy Hopkins later confirmed his suspicion that Hadley's license was suspended. A reasonable suspicion is "more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006)). The circumstances were more than sufficient in this case to support a reasonable suspicion, and Hadley fails to show that a motion to suppress would have had any chance of success. Moreover, to the extent that Hadley continues to assert that Deputy Hopkins never stopped him before and that he had not dealt with Deputy Hopkins prior to February 19, 2005, this argument provides no basis for concluding that Hadley's counsel was ineffective.

In his reply brief, Hadley asserts an additional argument that his counsel was ineffective for failing to file a motion to suppress because there was no basis for the officers to search Hadley's vehicle. The Court declines to address this argument because Hadley first raised it in his reply brief. It is well-established that a party, including a movant in a motion under § 2255, may not raise an argument for the first time in a reply brief. *United States v. McCorkle*, No. 1:07-CR-288-1,

2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010); *United States v. Joiner*, 847 F. Supp. 604, 606-07 (N.D. Ill. 1994) (refusing to consider arguments raised for the first time in a reply to the government's response to a motion under § 2255 and noting that arguments first raised in a reply brief are deemed waived).[1]

### B. Counsel Was Not Ineffective for Failing to Question Trooper Service About His Qualifications and Those of His Canine

Hadley next argues that his counsel was ineffective for failing to question Trooper Service about his credentials and those of his canine, Nemo. Hadley provides no basis to conclude that his counsel had any reason to question Trooper Service on these issues or that doing so would have furthered Hadley's defense. Trooper Service testified that he has been a K-9 handler for the Michigan State Police for 10 years and that he has worked with Nemo for seven and a half years. Beyond speculation, Hadley provides no basis to show that further questioning by his counsel would have provided any basis to call into doubt the validity of the results of the search. Moreover, Hadley's counsel states that he believed that it would not be to Hadley's benefit to spend more time on the qualifications of the dog or its handler because doing so might have given greater credibility to the search conducted by the dog. (Frederick Aff. ¶ 2.) Counsel's decision not to question Trooper Service on this area was within the wide range of reasonable professional assistance and provides no basis for relief.

### C. Counsel Was Not Ineffective for Failing to Question Deputy Hopkins About His Identification of Joseph Viera

Hadley next claims that his counsel was ineffective for failing to question Deputy Hopkins about his identification of Joseph Viera as Hadley's passenger. This argument is also frivolous. Hadley's counsel states: "[I]t was never considered in our preparation for trial that we would call

---

[1] Hadley argues in his reply that the entire basis for his motion is that Deputy Hopkins lacked probable cause to search his vehicle. This argument is frivolous. The only claim Hadley asserted in his § 2255 motion and supporting brief was that that Deputy Hopkins had no basis to stop him for driving without a license.

into question the existence of Mr. Viera as the other person in the vehicle with Mr. Hadley. In fact, Mr. Hadley's testimony is full of references made as to Mr. Viera being with Mr. Hadley at the stop that resulted in Mr. Hadley's arrest." (*Id.* ¶ 3.) Indeed, a review of the trial transcript shows that Hadley freely acknowledged that his passenger was Joseph Veira. There is no reason to conclude that examination of Deputy Hopkins on this issue would have shown that Deputy Hopkins was mistaken. Moreover, Hadley's post-trial claim in his reply brief and attached affidavit that he does not know Joseph Veira and that his references to Joseph Viera as his passenger at trial were simply mistakes or misunderstandings is simply not credible in light of Hadley's trial testimony.

        **D.**      **Counsel Was Not Ineffective for Failing to Object on Cross-Examination**

Hadley next argues that his counsel was ineffective for failing to object to more than 90% of the Government's cross-examination of him as being without proper foundation, beyond the scope of direct examination, or for badgering the witness. Hadley fails to support this argument by citing specific instances in the record when counsel should have objected to the assistant United States Attorney's questions. Thus, "[h]is mere speculation is insufficient to warrant § 2255 relief." *Thomas v. United States*, No. 95-4035, 1996 WL 262940, at *1 (6th Cir. May 16, 1996). Hadley has failed to show that his counsel was ineffective or that he suffered any prejudice by the alleged failure to object.

        **E.**      **Counsel Was Not Ineffective for Failing to Raise an Alternative Argument to the § 924(c) Charge**

Hadley next argues that his counsel was ineffective for failing to argue that even if Hadley possessed the gun, the evidence was insufficient to sustain a charge under § 924(c) because Deputy Hopkins testified that Hadley stated to him that he received the gun in exchange for transporting Viera in connection with the drug deal. Hadley contends that his counsel was ineffective for failing to make the argument because under *Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579 (2007),

9

he is factually innocent of the § 924(c) charge. In *Watson*, the Supreme Court held that a defendant who had pled guilty to bartering drugs for a gun had not "used" the gun in relation to a drug trafficking crime. *Id.* at 79, 128 S. Ct. at 583. Hadley contends that his case is similar to *Watson* and his counsel should have recognized this fact.

Hadley's argument fails for several reasons. First, *Watson* was decided over a year and a half after Hadley's trial concluded. Hadley's counsel thus could not have been ineffective for failing to raise an argument based upon *Watson*. As the Sixth Circuit has recognized, counsel cannot be considered ineffective for failing to predict the development of the law. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010). Second, Hadley's counsel states that his trial strategy, consistent with Hadley's insistence that he did not possess the gun, was to dispute that he possessed the gun:

> I made arguments for a Judgment of Acquittal that I believed then and still believe had merit in both fact and law. Throughout all of our preparation and the trial, it was our strategy to attack the drug issue and the Governments [sic] lack of evidence about any drugs being involved. Further, Mr. Hadley denied that he even possessed a weapon. Therefore, I was not going to argue that, "Well if you find that he does have a weapon that he denies having, then he didn't have it in furtherance of a drug trafficking offense." Trial strategy was developed with the full cooperation and understanding of Mr. Hadley.

(*Id.* ¶ 5.) Given Hadley's insistence that he did not possess the gun, it was not unreasonable for Hadley's counsel to make an alternative argument that Hadley could not be liable for the offense even if he possessed the gun. Third, *Watson* is distinguishable from the present case because in this case Hadley was not charged under the "use" prong of § 924(c)(1)(A), but instead he was charged with "possess[ing]" a firearm "in furtherance of" a drug offense. A number of courts have distinguished *Watson* and have held that a defendant who exchanges drugs for a gun "possesses" the gun "in furtherance" of a drug offense within the meaning of § 924(c)(1)(A). *United States v. Gurka*, __ F.3d __ 2010 WL 1882126 (1st Cir. 2010); *United States v. Doody*, 600 F.3d 752, 755-56

10

(7th Cir. 2010); *United States v. Gardner*, 602 F.3d 97, 103 (2d Cir. 2010); *United States v. Mahan*, 586 F.3d 1185, 1189 (9th Cir. 2009). In light of this distinction, it would have been professionally unreasonable for Hadley's counsel to make the alternative argument that Hadley now proposes. Thus, this claim lacks merit.

### F. Counsel Was Not Ineffective for Failing to Object to the Composition of the Jury Venire

Hadley argues that his counsel was ineffective for failing to challenge the makeup jury venire because none of the potential jurors was African-American. Although Hadley fails to cite any evidence supporting his claim, Hadley cannot show prejudice based upon the alleged failure of his counsel because any such challenge would have failed. This Court has previously rejected claims that this District's approved jury plan is unconstitutional. Moreover, the Sixth Circuit has rejected similar challenges to the constitutionality of this District's system of selecting jurors. *See United States v. Booker*, No. 05-1929, 2007 WL 2492427, at *2-3 (6th Cir. Sept. 4, 2007); *United States v. Johnson*, 40 F. App'x 93, 96 (6th Cir. 2002); *United States v. Buchanan*, 213 F.3d 302, 309-10 (6th Cir. 2000) (affirming the district court's denial of the defendants' challenge to the racial makeup of the jury venire); *United States v. White*, Nos. 05-2059, 95-2158, 95-2159, 95-2160, 1997 WL 345730, at *2 (6th Cir. June 20, 1997). Thus, this claim lacks merit.

### G. Counsel Was Not Ineffective for Failing to Poll the Jury

Hadley contends that his counsel was ineffective for failing to poll the jury, arguing that "[w]ithout the polling of the jury's verdict it could be that one or more jurors did not actually vote for conviction." (Movant's Br. at 8.) Hadley provides nothing to support his assertion that polling of the jurors could have disclosed anything irregular in the verdict. Such assertions are insufficient to warrant relief. *Jeffries v. United States*, No. 99-3692, 2000 WL 1679447, at *1 (6th Cir. Oct. 31, 2000).

11

### H. Counsel Was Not Ineffective for Failing to Provide Transcripts of All Proceedings

Hadley's final claim is that his counsel was ineffective by failing to comply with Hadley's request for transcripts of all proceedings in this Court. Hadley's counsel states:

> I provided Mr. Hadley with all the transcripts that I possessed. As an appointed Attorney, I requested transcripts of that which I felt were necessary for any further proceedings. There was never any valid discussions related to any possible appealable issues related to "voir dire, jury instruction, jury excerpts, grand jury proceedings and sentencing."

(Frederick Aff. ¶ 8.) Hadley fails to identify any specific claim that he was precluded from asserting based upon his lack of a particular transcript. This claim, like the others, lacks merit.

### III. No Certificate of Appealability.

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Hadley has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Hadley's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of Hadley's claims was debatable or wrong. Therefore, the Court will deny Hadley a certificate of appealability.

## Conclusion

For these reasons, Hadley's § 2255 Motion (docket no. 1) will be dismissed. In addition, the Court will dismiss as moot Hadley's Motion for Expedited Briefing Schedule (docket no. 27). Finally, a certificate of appealability will be denied as to each issue raised by Hadley because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.


Dated:  June 22, 2010                                          /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE